# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**WILLIAM HENDERSON**

**CIVIL ACTION**

**VERSUS**

**NO. 16-265-JWD-RLB**

**JAMES M. LEBLANC, ET AL.**

## RULING AND ORDER

This matter comes before the Court on the *Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1) and FRCP 12(b)(6)* (Doc. 44) filed by Defendants James LeBlanc, Darrell Vannoy, Stephanie Lamartiniere, Leslie Dupont, Dr. Randy Lavespere, and Nurse Betty Taplin (LeBlanc, Vannoy, Lamartiniere, and Dupont are collectively the "Warden Defendants"; Dr. Lavespere and Taplin are collectively the "Medical Defendants"; and all defendants are collectively, "Defendants"). Plaintiff William Henderson opposes the motion. (Doc. 37.) Neither Defendants nor Plaintiff filed a reply. Oral argument is not necessary. The Court has carefully considered the law, the allegations in *Plaintiff's Second Amended Complaint* (Doc. 44), and the arguments and submissions of the parties and is prepared to rule.

For the following reasons, the Court will grant the Defendants' motion in part and deny it in part. Plaintiff's claims for prospective injunctive relief against the Defendants in their official capacity are not barred by the Eleventh Amendment. However, all of Plaintiff's claims for damages under 42 U.S.C. § 1983, except those against Nurse Taplin, are dismissed for failure to state a viable claim. Plaintiff's claims against the Warden Defendants will be dismissed with prejudice, as further amendment would be futile. Plaintiff's claims against Dr. Lavespere are dismissed without prejudice, and Plaintiff is given twenty-one (21) days in which to cure the

Jury

deficiencies in *Plaintiff's Second Amended Complaint* (Doc. 37), if he can do so. If the deficiencies are not cured, these claims will be dismissed with prejudice.

## I.    Relevant Factual Background[1]

### A.  The Parties

Plaintiff is an inmate at Louisiana State Penitentiary ("LSP"). (Doc. 37 at 1.) This suit involves the Defendants' alleged failure to ensure that the Plaintiff receive his HIV medication timely and consistently.

Defendant James LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"). According to Plaintiff, LeBlanc (1) is "responsible for the functioning and control of all programs within the" DPSC, (2) "creates the rules and regulations that govern the inner workings of [DPSC]", and (3) "is tasked with creating policies that ensure the basic medical needs of [DPSC] offenders are met and that there is an internal system to readily address offender grievances in a timely fashion". (Doc. 37 at 3–4.)

Defendant Darrel Vannoy is LSP's Warden. (Doc. 37 at 4–5.) Plaintiff alleges that Vannoy is the "final policy and decision maker of LSP and . . . is tasked with ensuring offenders at LSP receive adequate medical care." (Doc. 37 at 5.) Vannoy (1) "is . . . in charge of hiring and contracting with medical professionals tasked to treat offenders with serious medical conditions, such as HIV[,]" and (2) is also "responsible for reviewing any administrative grievance [("ARP")] and implementing curative remedies to serious grievances, such as inadequate medical care." (Doc. 37 at 5.)

---

[1] The following allegations are taken from *Plaintiff's Second Amended Complaint* (Doc. 37) and are assumed to be true for purposes of this motion.

Defendant Stephanie Lamartiniere is the assistant warden of health services at LSP. (Doc. 37 at 5.) She "is charged with overseeing offender medical treatment at LSP, which includes the treatment of offenders diagnosed with HIV." (Doc. 37 at 5.)

Defendant Leslie Dupont is a deputy warden. (Doc. 37 at 6.) Dupont "is the unit head and tasked with reviewing responses to ARPs." (Doc. 37 at 6.)

As to the Medical Defendants, Nurse Betty Taplin "is the senior nurse in charge of HIV positive offenders at" LSP. (Doc. 37 at 7.) Dr. Randy Lavespere is the "medical director of the R.E. Barrow Treatment Center" at LSP and "has the responsibility to ensure all doctors provide adequate care to offenders, including HIV positive offenders" like the Plaintiff. (Doc. 37 at 7.)

### B. Underlying Events

Plaintiff was raped a number of times at the Terrebonne Parish Jail. (Doc. 37 at 1.) As a result, he contracted HIV. (Doc. 37 at 1.) Plaintiff was subsequently convicted of second degree murder and sentenced to life without parole. (Doc. 37 at 1.)

On December 10, 2012, Plaintiff came to LSP. (Doc. 37 at 8.) That day, he asked to be tested for HIV. (Doc. 37 at 8.)

Several months later, Plaintiff was tested. (Doc. 37 at 8.) One month later, Plaintiff was found to be HIV positive. (Doc. 37 at 8.) "It was further determined that Plaintiff was in immediate need of medications due to the fact that his 'T-Cell Count' was almost low enough to officially diagnose Plaintiff with AIDS." (Doc. 37 at 8.)

"In mid-2013, Plaintiff began receiving four different types of medication" for his HIV. (Doc. 37 at 9.) Plaintiff was supposed to receive two medications once a day and two medications twice a day. (Doc. 37 at 9.) Three months later, Plaintiff was scheduled to see a specialist via TeleMed. (Doc. 37 at 9.)

During the first TeleMed appointment, a doctor told the Plaintiff "(for the first time) that Plaintiff should receive and take his medications twice daily and once daily, depending on the prescription." (Doc. 37 at 9.)   According to Plaintiff, "Nurse Betty[] was present[,] and the specialist informed her that she should not dispense Plaintiff's medications all at once.  This conversation was recorded." (Doc. 37 at 9.)  Plaintiff also alleges: "The TeleMed specialist explained to [him] that if he did not consistently take his medications for the rest of his life, Plaintiff would suffer an agonizing deterioration of his immune system which would make him susceptible to rare cancers and impair his immune system, making him susceptible to an early death." (Doc. 37 at 9.)   The TeleMed specialist also said that "inconsistent dispensation of antiretroviral HIV medication leads to viral resistance which compromises Plaintiff's ability to stave off full-blown AIDS." (Doc. 37 at 10.)

In 2014, Plaintiff was not given any of his medicines "anywhere from three to six times per month[.]" (Doc. 37 at 10.)  "At one point, Plaintiff did not receive any medications for nearly two and a half weeks." (Doc. 37 at 10.)

In mid-2014, Plaintiff filed his first ARP against LSP "for failing to consistently provide [him] with his antiretroviral medications." (Doc. 37 at 10.)  LSP eventually changed Plaintiff's medications "to a different 'class group' (three pills once a day) as his initial antiretroviral medications failed because of inconsistent dosing." (Doc. 37 at 10.)

In May 2015, Plaintiff was transferred to a different part of the prison. (Doc. 37 at 10.) "It took approximately one week for his medications to arrive at Main Prison." (Doc. 37 at 10.)

In late 2015, Plaintiff was returned to the last part of the prison. (Doc. 37 at 11.)  "In late November through December, Plaintiff was again denied his medications for numerous days in a row." (Doc. 37 at 11.)

According to Plaintiff, "Plaintiff continues to receive inconsistent doses of his antiretroviral medications. As recently as August 25, 2016, Plaintiff failed to receive the necessary daily doses of his life-sustaining medications." (Doc. 37 at 11.)

Plaintiff's claims are broadly divided into two categories. As to the Warden Defendants, Plaintiff's claims mainly relate to their handling of his ARPs. Plaintiff's allegations against the Medical Defendants focus on their allegedly improper provision of care. The specific allegations against each defendant will be set forth below.

## II. Discussion

### A. Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained: "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.*, 135 S. Ct. at 346-47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and

viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500,

502–03 (5th Cir. 2014).  The task of the Court is not to decide if the plaintiff will eventually be

successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

### B.  Sovereign Immunity

Preliminarily, Defendants seek dismissal of all claims for monetary damages against the

Defendants in their official capacity as barred by the Eleventh Amendment.  Defendants assert

that the most recent complaint "again does not specify whether [Plaintiff] is seeking damages

against each defendant in their personal or official capacities[,]" so, "[o]ut of an abundance of

caution," Defendants request dismissal on Eleventh Amendment grounds.

Plaintiff responds that he "seeks declaratory and injunctive relief to ensure he will receive

his life-sustaining medication without interruption for the duration of his incarceration.  For his

claim of declaratory and injunctive relief, he sues the defendants in their official capacities, which is not precluded by the Eleventh Amendment." (Doc. 46 at 3.)

The Court agrees with Plaintiff. "The Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983." *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n. 9 (5th Cir. 1991)). "Section 1983 does not waive the states' sovereign immunity[.]" *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n. 7, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979)).

Nevertheless, "[i]n *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity." *Aguilar*, 160 F.3d at 1054. "The [*Ex Parte Young*] Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law." *Id.* (citing *American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920–21 (5th Cir. 1993)). "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Id.* (citing *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992)).

Here, Plaintiff satisfies the *Ex Parte Young* exception. In his prayer, Plaintiff asks for "[a]n immediate order for injunctive relief requiring all necessary personnel within the Department of Corrections to ensure that Mr. Henderson receives his daily dosages of life-sustaining medications[.]" (Doc. 37 at 22.) Plaintiff also acknowledges in his opposition that he sues the Defendants in their official capacity for this injunctive relief. (Doc. 46 at 3.) Lastly,

7

Plaintiff alleges that his problem is ongoing, as the *Second Amended Complaint* states that Plaintiff "continues to receive inconsistent doses of his antiretroviral medications" and that, "[a]s recently as August 25, 2016, Plaintiff failed to receive the necessary daily doses of his life-sustaining medications." (Doc. 37 at 11.) Accordingly, Defendants' motion to dismiss on Eleventh Amendment grounds is denied.

### C. Claims Against the Warden Defendants

#### 1. Parties' Arguments

Defendants also seek dismissal of Plaintiff's claims for damages. Defendants focus on two aspects of Plaintiff's claims against the Warden Defendants: Plaintiff's ARP and the Warden Defendants' role as supervisors.

As to the first, Defendants rely on *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005), which, according to Defendants, held that an inmate has no "federally protected liberty interest in having . . . grievances resolved to his satisfaction", so there can be no due process violation arising from an official's failure to investigate a grievance. (Doc. 44-1 at 5 (quoting *Geiger*, 404 F.3d at 374).) Defendants maintain:

> In this instant matter, plaintiff's only claims against defendant Stephanie Lamartiniere are that defendant Lamartiniere responded to plaintiff's ARP grievance stating in the response the reasons for her decision. In addition, plaintiff's only claims against defendants, Vannoy and Dupont, are that they also signed off or approved the response provided by defendant Lamartiniere to the plaintiff regarding his ARP grievance. Finally, plaintiff's only claims against defendant James LeBlanc relate to a second step response from his office related to plaintiff's ARP grievance. According to the clear jurisprudence from the courts, plaintiff has no cognizable interest in his ARP grievance or any alleged failure to properly investigate or alleged erroneous response to his ARP grievance.

(Doc. 44-1 at 6.) Thus, "plaintiff has no cognizable interest in his ARP grievance or any alleged failure to properly investigate or alleged erroneous response to his ARP grievance." (Doc. 44-1 at 6.)

8

As to supervisory liability, Defendants maintain that Plaintiff's allegations are "vague and conclusory" and "show no personal involvement by these defendants in plaintiff's medical treatment[,] nor has plaintiff identified a specific policy or procedure implemented by any of these defendants which caused any alleged harm to the plaintiff." (Doc. 44-1 at 7.) Defendants contend that, as a result, Plaintiff's claims for supervisory liability must be dismissed.

Plaintiff opposes the motion. Plaintiff argues that "all defendants had actual notice of [Plaintiff's] condition and acted with deliberate indifference to his life-threatening medical condition by failing to give him life-sustaining medication for weeks at a time." (Doc. 46 at 3 (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).) Plaintiff further contends that, when Plaintiff tried to resolve his grievance, "prison and department officials did not investigate [Plaintiff's] allegations, did not respond appropriately to [his] concerns, and have not taken any steps to ensure that [Plaintiff] receives his medications as prescribed, as his medications remain inconsistent to date." (Doc. 46 at 4.)

Specifically responding to Defendants' arguments, Plaintiff states that, with respect to the ARP, *Geiger* is distinguishable because it involved the failure to provide an inmate with pornographic magazines. Conversely, here Plaintiff did not complain of something atypical; rather, his life was at risk for the failure to administer the ARP correctly.

With respect to supervisory liability, Plaintiff maintains that each of the Warden Defendants' "had notice that [Plaintiff] was not receiving life-sustaining medication and these named defendants failed to investigate or provide a remedy to the problem." (Doc. 46 at 5.) Further, the "inaction of defendants Le[B]lanc, Vannoy, Lamartiniere, and Dupont to remedy the life-threatening situation caused by inconsistent medical treatment <u>is</u> an omission by government

officials which makes each of them liable in their official and individual capacities." (Doc. 46 at 5 (underline in original).)

## 2. Relevant Standard

"Qualified immunity provides government officials performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

As to the constitutional violation prong, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)).  " 'A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).  " 'In order to establish supervisor liability for constitutional violations

committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.' " *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*)).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). " 'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Id.* (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998)). "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). " 'Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' " *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

Additionally, "[a] failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Porter*, 659 F.3d at 446 (quoting *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). Nevertheless, "[l]iability for failure to promulgate policy . . . require[s] that the defendant . . . acted with deliberate indifference." *Id.* As the Fifth Circuit stated with respect to "failure-to-train" claims (and, by "logical" analogy, failure-to-promulgate claims):

> To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless chooses to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard less stringent than deliberate indifference would be employed, and a failure-to-train claim would result in *de facto respondeat* superior liability.

*Porter*, 659 F.3d at 447 (citations, alterations, and quotations omitted).

As to the other prong of the Court's analysis, " '[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. ——, ——, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (per curiam ) (alterations and internal quotation marks omitted)). " 'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.' " *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *White*, 580 U.S. at ——, 137 S. Ct. at 551 (internal quotation marks omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 580 U.S. at ——, 137 S. Ct. at 551 (internal quotation marks omitted)).

" 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 580 U.S., at ——, 137 S.

Ct., at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. ——, ——, 134 S. Ct. 2012, 2023, 188 L. Ed. 2d 1056 (2014)). "That is a necessary part of the qualified-immunity standard[.]" *Id.*

### 3. Claims Against Lamartiniere, Dupont, and Vannoy

#### a. Specific Allegations Against Lamartiniere, Dupont, and Vannoy

The Court will begin by detailing the allegations against Lamartiniere, Dupont, and Vannoy. Plaintiff claims that, in mid-2014, he filed his first ARP about the "inconsistent dispensation of his life-sustaining medications." (Doc. 37 at 13.) Plaintiff asserts that, in that ARP, he "included the master itemized numbers of medical requests/complaints filed not only by [him] but by Sgt. Darcey[,]" a female guard "who filed complaints based on Plaintiff missing his medications up to six times in one month and once over a two-and-a-half-week period." (Doc. 37 at 13.)

Plaintiff alleges that "[o]ne or more of the defendants sent Captain Callahan to Plaintiff to request that Plaintiff drop his initial ARP with the promise that Plaintiff's medications would be consistently dispensed and he would no longer miss a dose." (Doc. 37 at 13.) According to Plaintiff, he "feared that if he did not drop the ARP, he would continue to receive his medications on an inconsistent basis." (Doc. 37 at 13.) Plaintiff maintains that, at this time, "it is unclear which defendants sent Captain Callahan to Plaintiff and which defendants had knowledge about Plaintiff's inconsistent dosing." (Doc. 37 at 13.)

In late 2015, Plaintiff filed a second ARP about "the ongoing inconsistent dispensation of the life-sustaining medications[.]" (Doc. 37 at 14.)  He further complained that, when he got his medication, "he was not provided food." (Doc. 37 at 14.)

Plaintiff claims that Lamartiniere "handled step one of Plaintiff's second/instant ARP," and, "[i]n her denial, she alleged that there [was] 'extensive' evidence that Plaintiff refused his life-sustaining medications and that Plaintiff was receiving Ensure which would qualify as the 'food' which should be taken with his medicine." (Doc. 37 at 14.) Plaintiff alleges that, "[i]n order to refuse life-sustaining treatment, Plaintiff would have had to sign a written refusal for his medications.  There is no evidence that Plaintiff signed such refusals.  Plaintiff never refused his medications and Plaintiff consistently asked for his medications when they were not provided." (Doc. 37 at 14.)  Thus, according to Plaintiff, Lamartiniere's response to Plaintiff's ARP is "simply untrue", and her "review and denial of [Plaintiff's] ARP proves that she had personal knowledge that he received inconsistent dosing of his medication." (Doc. 37 at 14.)  Plaintiff further alleges that, "[o]nce she was put on actual notice of the issue, [Lamartiniere] had a duty to ensure that [Plaintiff] consistently received his medications." (Doc. 37 at 14.)  Given Plaintiff's not receiving his medications "on a consistent basis before or after filing the ARP," Lamartiniere was deliberately indifferent.

Plaintiff also asserts in his most recent complaint that Lamartiniere "is charged with overseeing offender medical treatment at LSP, which includes the treatment of offenders diagnosed with HIV." (Doc. 37 at 5.)  Plaintiff maintains that, since other offenders at LSP have HIV, Lamartiniere "should have known the seriousness of his condition, his need for consistent medication, and the potentially grave risk associated with inconsistent dosing." (Doc. 37 at 5.)

According to Plaintiff, "Lamartiniere failed to fulfill these duties by failing to provide [Plaintiff] with proper, consistent treatment for his life threatening medical condition." (Doc. 37 at 5.)

Plaintiff asserts that Lamartiniere "had notice on several occasions that [Plaintiff] was not receiving proper medical treatment, as evidenced by her personal response to [Plaintiff's] ARP." (Doc. 37 at 6.) Lamartiniere "denied [the] ARP and claimed there was extensive evidence that he refused his medication", but "this is inconsistent with Mr. Henderson filling multiple ARPs, in which he begged for consistent administration of his life sustaining medications." (Doc. 37 at 6.) Plaintiff maintains that Lamartiniere "has yet to provide any documentation that [Plaintiff] willfully refused his medication." (Doc. 37 at 6.) In fact, "no such documentation exists, [and] . . . Lamartiniere improperly dismissed these ARPs and disregarded the fair administration of the grievance procedure." (Doc. 37 at 6.)

Again, Dupont is a deputy warden who "is the unit head and tasked with reviewing responses to ARPs." (Doc. 37 at 6.) Plaintiff pleads that "Dupont signed off on Warden Lamartiniere's denial of [Plaintiff's] ARP, thereby endorsing Lamartiniere's unsubstantiated reasons for denying the ARP." (Doc. 37 at 6.) Further, Plaintiff alleges that "Dupont allowed [Plaintiff's] grievance to remain unaddressed based on unsubstantiated allegations" and that the denial of Plaintiff's ARP "had life threatening ramifications[.]" (Doc. 37 at 6–7.) Plaintiff also states that "Dupont is equally responsible for ensuring offenders with HIV at LSP receive adequate medical care" and that Dupont "failed to implement adequate medical policies that guarantee consistent dosing of life sustaining medications for offenders living with HIV." (Doc. 37 at 7.)

As to Dupont, Plaintiff alleges that he "signed off on the denial of the ARP" and thus "endorsed" Lamartiniere's deliberate indifference. (Doc. 37 at 15.) Dupont is, according to

Plaintiff, "equally responsible as the 'unit head.' " (Doc. 37 at 15.) Plaintiff pleads that, by signing off, Dupont had personal knowledge of the Plaintiff getting medications inconsistently and that he thus acted with deliberate indifference.

Defendant Darrel Vannoy is LSP's warden and is, according to Plaintiff, the "final policy and decision maker of LSP . . . tasked with ensuring offenders at LSP receive adequate medical care." (Doc. 37 at 5.) Vannoy (1) "is . . . in charge of hiring and contracting with medical professionals tasked to treat offenders with serious medical conditions, such as HIV," and (2) "is further responsible for reviewing any administrative grievance and implementing curative remedies to serious grievances, such as inadequate medical care." (Doc. 37 at 5.)

Plaintiff claims that Vannoy's office screens all ARPs. (Doc. 37 at 15.) Once Plaintiff's ARP was filed, Vannoy was "on notice" about Plaintiff's lack of treatment, and, once Vannoy received notice, he "owed a duty to ensure [Plaintiff] receive proper medical treatment" and "to conduct an internal investigation to determine the source of the problem and remedy the problem." (Doc. 37 at 16.) Vannoy's failure amounted to deliberate indifference, as did his failure to "hire qualified individuals." (Doc. 37 at 16.) Lastly, Vannoy was "responsible for implementing internal policies to address serious grievances", and LSP's failure to resolve Plaintiff's ARP adequately makes Vannoy personally responsible. (Doc. 37 at 16.)

### b. Analysis

The Court will grant the motion to dismiss as to Lamartiniere, Dupont, and Vannoy. Again, " '[a] supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter*, 659 F.3d at 446 (quoting *Gates*, 537 F.3d at 435). None of these defendants personally participated in the denial of

medical care. While Plaintiff asserts that Dupont and Vannoy are liable for the failure to implement policies with respect to the ARPs and medications, Plaintiff does so only in a conclusory manner without providing any factual detail.

Plaintiff has also failed to state a cognizable claim of deliberate indifference as to any of these defendants. Dupont and Vannoy are easily dispensed with here; Plaintiff alleges nothing more than receipt and review of the ARP, and this is insufficient to establish knowledge. *See Dugas v. Cain*, No. 09-0177, 2010 WL 4695313, at *5 (M.D. La. Oct. 20, 2010), *report and recommendation adopted*, No. 09-177-BAJ-CN, 2010 WL 4704446 (M.D. La. Nov. 12, 2010) ("the mere fact that the plaintiff may have made requests for medical attention in an institution housing more than 5,000 inmates does not establish any particularized knowledge on the part of the supervisory defendants, in the absence of an allegation that the defendants were personally involved in his health care"). The allegations against these defendants amounts to little more than claims of vicarious liability for which the Plaintiff cannot recover under § 1983. *See Simon*, 694 F. App'x at 261.

While Lamartiniere presents a closer call, the Court concludes that Plaintiff has failed to adequately plead deliberate indifference against her as well. Plaintiff alleges that a female guard complained at least six times about the Plaintiff not receiving his medication, but there is no allegation Lamartiniere received this information. Plaintiff also alleges that one of the defendants sent Captain Callahan to ask Plaintiff to "drop his initial ARP with the promise that Plaintiff's medications would be consistently dispensed and he would no longer miss a dose" (Doc. 37 at 13), but Plaintiff admits that, at this time, "it is unclear which defendants sent Captain Callahan to Plaintiff and which defendants had knowledge about Plaintiff's inconsistent dosing." (Doc. 37 at 13.) Lastly, Plaintiff pleads that Lamartiniere handled and denied his ARP

and, in doing so, claimed there was "extensive evidence" when there was none. But there is no allegation that Lamartiniere's conduct was anything more than negligent or even grossly negligent.

The Court finds that what Plaintiff is really alleging against these defendants is that they mishandled his ARP in deliberate indifference to his medical needs, but numerous cases from the Fifth Circuit and this Court have denied such claims in reliance on *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005). For example, in *Simon v. LeBlanc*, an inmate alerted medical staff at his initial screening that he was diagnosed with "Stevens-Johnson syndrome, a severe inflammatory eruption of the skin and mucous membranes that results when the patient has a respiratory infection or an allergic reaction to drugs and other substances." *Simon*, No. 10-201, 2016 WL 3749211, at *1 (W.D. La. July 7, 2016), *aff'd*, 694 F. App'x 260 (5th Cir. 2017). Plaintiff claimed that the medical staff prescribed for him certain drugs that were a "known allergen" to him that inflamed his condition, and prevented him from getting the proper drugs. *Id.* Plaintiff also claimed that his wife sent a letter to the Warden "expressing her concerns about [plaintiff's] medical treatment." *Id.* Plaintiff filed suit against the medical staff, the warden, and secretary LeBlanc. *Id.* Following dismissal of the medical staff, LeBlanc and the warden moved for summary judgment. *Id.* The district court granted the motion on the grounds that (a) plaintiff failed to demonstrate an unconstitutional policy, and (b) "none of [plaintiff's] allegations, including the alleged letter from his wife to [the warden], come close to establishing that either LeBlanc or [the warden] acted, or failed to act, with deliberate indifference to the alleged violations of [plaintiff's] constitutional rights by [prison] medical staff." *Id.* at *2.

The Fifth Circuit affirmed. *Id.*, 694 F. App'x at 261. On appeal, Plaintiff argued that the defendants were "liable to him under the theory of respondent superior and because they denied

his grievance." *Id.* After quickly rejecting the first argument, the Fifth Circuit held: "Because a prisoner does not have a constitutional right to have his grievances resolved to his liking, [plaintiff's] argument that the appellees are liable to him because they denied his grievances likewise fails." *Id.* (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)).

*Jackson v. Dunn*, 610 F. App'x 397 (5th Cir. 2015) (per curiam) also supports the Court's conclusion. There, an inmate complained that the district court erred in dismissing his claims against two doctors and an interim warden. *Id.* Plaintiff claimed that the doctors were deliberately indifferent to his medical needs and that the warden "violated his due process rights by refusing to investigate and expunge a false disciplinary conviction from his record." *Id.*

The Fifth Circuit affirmed. *Id.* at 398. The plaintiff claimed that one doctor "violated his constitutional rights by denying his administrative remedy program request", but the appellate court found this argument was "without merit. [Plaintiff] did not have a 'federally protected liberty interest in having [his] grievances resolved to his satisfaction.' " *Id.* (quoting *Geiger*, 404 F.3d at 374). The Court also rejected the claims against the warden, explaining: "[Plaintiff] does not have a constitutional right to have his grievance resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices[.]" *Id.* (citation omitted).

Similarly, on several occasions, this Court has rejected claims against prison officials for denying medical care in connection with the ARP process. *See Mandigo v. LeBlanc*, No. 12-170-JJB, 2013 WL 3490671, at *4 (M.D. La. July 9, 2013) (granting motion to dismiss and finding as to one defendant: "the plaintiff's assertion that defendant [assistant warden] improperly denied the plaintiff's administrative grievance fails to state a meritorious claim inasmuch as an inmate plaintiff is not constitutionally entitled to an investigation into his administrative complaints or to

a fair or favorable response thereto, and there is no procedural due process right inherent in such a claim." (citing *Geiger*, 404 F.3d at 374)); *Dugas*, 2010 WL 4695313, at *5, *report and recommendation adopted*, 2010 WL 4704446 (relying on *Geiger* and finding that "any claim regarding the alleged failure of the defendants to properly address, investigate or respond to his complaints or administrative grievances regarding his medical care is without legal foundation.").

Lastly, even assuming that a constitutional violation had been sufficiently alleged as to these defendants, Plaintiff has failed to establish that these Defendants are not entitled to qualified immunity. Quite simply, Plaintiff has not shown that every reasonable officer in Lamartiniere, Dupont, and Vannoy's position would know that his or her conduct was unlawful, nor has Plaintiff shown that their actions were plainly incompetent or a knowing violation of the law.

For all these reasons, the Court finds that Plaintiff has failed to state a claim against Lamartiniere, Dupont, and Vannoy. As a result, Plaintiff's claims against them for damages in their individual capacities are dismissed with prejudice. Moreover, for reasons discussed below, the Court will deny Plaintiff leave to amend these claims as futile.

### 4. Claims Against LeBlanc

#### a. Specific Allegations Against LeBlanc

Again, LeBlanc is Secretary of the DPSC. According to Plaintiff, LeBlanc (1) is "responsible for the functioning and control of all programs with the [DPSC]", (2) "creates the rules and regulations that govern the inner workings of [DPSC]", and (3) "is tasked with creating policies that ensure the basic medical needs of [DPSC] offenders are met and that there is an internal system to readily address offender grievances in a timely fashion." (Doc. 37 at 3–4.)

Plaintiff claims that LeBlanc "failed to create an adequate policy and oversight for the treatment of [DPSC] offenders infected with HIV" and "failed to provide an adequate grievance process" for Plaintiff "to raise the issue of his improper medical treatment in a timely fashion." (Doc. 37 at 4.)  Plaintiff asserts the grievance process is inadequate (1) because Plaintiff, a "man[] sick with HIV[,] [had] to resort to filing [ARPs] to ensure he received a daily dose of life-sustaining medication" and (2) because it takes <u>weeks</u> (or longer) to fully resolve an ARP", and Plaintiff was forced to file multiple ARPs, which is a "clear indication that the filing of the first ARP did little to remedy the issue." (Doc. 37 at 4 (underline in original).)

Plaintiff also claims that LeBlanc "handled the final step of Plaintiff's second/instant ARP, which adopted Defendant Lamartiniere's initial response to the second/instant ARP." (Doc. 37 at 17.)  Plaintiff alleges that LeBlanc "knew about Plaintiff's life-threatening situation and failed to conduct an investigation and refused to even attempt to intervene on Plaintiff's behalf." (Doc. 37 at 17.)  Plaintiff states that LeBlanc is consequently "equally deliberately indifferent to Plaintiff's medical needs." (Doc. 37 at 17.)

Additionally, Plaintiff alleges that LeBlanc "creates the rules and regulations that govern the inner workings of DOC" and so is "tasked with creating policies that ensure the basic medical needs of DOC offenders are met and that there is an internal system to readily address offender grievances in a timely fashion." (Doc. 37 at 17.)  Plaintiff claims that LeBlanc "failed to create an adequate policy and oversight for the treatment of DOC offenders infected with HIV". (Doc. 37 at 17.)  Plaintiff maintains that he had to file two separate ARPs that were "not handled in a timely fashion and did not solve the problem", and, during this time, Plaintiff's "condition worsened." (Doc. 37 at 17.)  According to Plaintiff, "Le[B]lanc had knowledge of the issue[,] and his failure to intervene demonstrates deliberate indifference." (Doc. 37 at 17.)

### b. Analysis

The Court grants Defendants' motion as to LeBlanc. There is no allegation that LeBlanc was personally involved in the denial of medical care.

Additionally, as stated above, Plaintiff's complaints are essentially that LeBlanc did not adequately handle his ARP. But, again, "[Plaintiff] does not have a constitutional right to have his grievance resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices[.]" *Jackson*, 610 F. App'x at 398 (citation omitted); *see also Mandigo*, 2013 WL 3490671, at *4 ("an inmate plaintiff is not constitutionally entitled to an investigation into his administrative complaints or to a fair or favorable response thereto, and there is no procedural due process right inherent in such a claim." (citing *Geiger*, 404 F.3d at 374)). Thus, Plaintiff has no claim against LeBlanc for not resolving the ARP favorably or fairly.

Further, Plaintiff has not alleged a failure to adopt a policy so much as that the DPSC's policies were inadequate because the ARPs took too long to resolve, but Plaintiff has failed to demonstrate how the policies were in fact inadequate or unreasonable. Specifically, DPSC has implemented a two-step administrative process that involves the inmate submitting an initial grievance to the warden's office at the inmate's facility. *See* La. Admin. Code. tit. 22:I, § 325. The administrative rules state that, when an inmate is faced with an "emergency or sensitive issue," he may bypass the usual administrative procedure and file an "emergency request" to the shift supervisor, who "shall immediately review the request to determine the appropriate corrective action to be taken." *See Id.*, § 325(H). Further, prison officials have, as a general rule, forty days for the first step in the ARP process and forty-five for a second-step appeal to the Secretary of DPSC. *See id.*, § 325(J)(1)(a)–(b). "If an offender is not satisfied with the second step response, he may file suit in district court. *Id.*, § 325(J)(1)(b)(iv). Critically, the DPSC rules

specifically state that "[n]o more than 90 days from the initiation to completion of the [entire ARP] process shall elapse, unless an extension has been granted. Absent such extension, *expiration of response time limits shall entitle the offender to move on to the next step in the process.*" *Id.*, § 325(J)(1)(c) (emphasis added). Plaintiff has failed to cite a single case supporting the argument that this procedure—which expressly allows for an emergency request and for an inmate to file suit for mandatory injunctive relief if the prison officials delay longer than ninety days—is inadequate.

In any event, Plaintiff also had to establish that LeBlanc acted or failed to act with deliberate indifference, *Porter*, 659 F.3d at 446, and Plaintiff has not done so. Specifically, Plaintiff's allegations that LeBlanc had knowledge of a substantial risk of harm to the Plaintiff are, at best, conclusory. Moreover, even assuming that Plaintiff had alleged a failure-to-adopt-policies claim, he has not shown that it was " 'obvious that the likely consequence' of not adopting [such] . . . policies . . . would be a deprivation of civil rights." *Id.* at 448. There is no allegation "that a reasonable person would have had actual or constructive notice that [the ARP policy] . . . would result in instances" of constitutional violations, yet LeBlanc nevertheless chose "to retain that program." *Id.* at 446–47.

For all these reasons, Defendants' motion to dismiss the claims for monetary damages against Secretary LeBlanc is granted, and such claims are dismissed. Moreover, for reasons discussed below, the Court will deny Plaintiff leave to amend these claims, as such amendment would be futile.

### D. Medical Defendants

#### 1. Parties' Arguments

Defendants assert that Plaintiff "simply named . . . Lavespere as a defendant, apparently due to his position at LSP as the medical director[.]" (Doc. 44-1.) Defendants argue that Plaintiff pleads no facts as to any personal involvement or knowledge by Dr. Lavaspere; rather, according to Defendants, Plaintiff is simply trying to hold Dr. Lavespere liable for his supervisory position, and this is prohibited under § 1983.

As to Nurse Betty Taplin, Defendants contend that Plaintiff's claims against her "stem from two tele-med visits which Plaintiff alleges that Nurse Taplin was present for in late 2013 and a following visit for which Plaintiff does not specify a date or time." (Doc. 44-1 at 7.) Defendants assert that Plaintiff's allegations against Nurse Betty are conclusory and that there are "no factual allegations that Nurse Taplin regularly dispensed his medication or that she was responsible for the dispensation of his medications. Plaintiff simply wishes to hold Nurse Betty liable for deliberate indifference for being present for one doctor visit." (Doc. 44-1 at 9.)

Further, according to Defendants, case law establishes that delays in receiving medication do not constitute deliberate indifference. This rule even applies to a delay in administering HIV medication.

Lastly, Defendants argue that Plaintiff suffered no actual physical harm from these delays. "The closest plaintiff comes to alleging a specific harm is plaintiff's allegation that he was changed to more effective medications because of the brief delays in receiving his medication." (Doc. 44-1 at 10.) But Defendants respond: "In fact, plaintiff's allegations actually show that he was being regularly treated for his HIV medical condition, that he was regularly seen by specialists via tele-medicine in connection with this treatment, and that prison officials

responded to problems with his treatment by providing him with effective alternative medications to treat his condition." (Doc. 44-1 at 10.)  Further, Defendants argue that there's no allegation that Plaintiff's current medications fail to adequately treat his HIV.

Plaintiff opposes dismissal of both Medical Defendants.  First, Plaintiff states that Dr. Lavespere is the "treating physician" at LSP, so he is "responsible for ensuring his patients receive proper medical treatment while incarcerated at" LSP. (Doc. 46 at 6.)  Plaintiff asserts: "At this stage in the proceeding, discovery has not been provided to [Plaintiff] and counsel's efforts to obtain [Plaintiff's] medical records have proved fruitless.  Thus, the full extent of Dr. Lavespere's failure to ensure [Plaintiff] received adequate treatment for his HIV is unknown." (Doc. 46 at 6.)  Plaintiff maintains that Dr. Lavespere had notice of Plaintiff's HIV from Plaintiff's treatment and ARPs.  Plaintiff argues that Dr. Lavespere acted with deliberate indifference and that dismissal before discovery of medical records is premature.

Second, as to Nurse Betty Taplin, Plaintiff argues that she was "present during at least two of [Plaintiff's] TeleMed visits with an HIV specialist." (Doc. 46 at 7.)  According to Plaintiff, during the first visit, the TeleMed specialist told Plaintiff and Nurse Taplin that his "HIV medications should not be dispensed all at once" and that "the failure to consistently take HIV medications would result in viral resistance and could cause [Plaintiff] to suffer a premature death from AIDS." (Doc. 46 at 7.)  Further, Plaintiff failed to receive his medications "on dozens of occasions", and, on the second TeleMed visit, Nurse Betty obstructed Plaintiff's attempts to communicate with the TeleMed specialist. (Doc. 46 at 7 (underline in original).)  All of this amounts to deliberate indifference.  Lastly, Plaintiff claims that Defendants' cited case law is distinguishable and not binding.

## 2. Relevant Standard

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976) (internal citation omitted). These claims "require[] a twofold analysis. [Plaintiff] must first prove objective exposure to a substantial risk of serious harm." *Gobert*, 463 F.3d at 345 (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). "Additionally, he must show that prison officials acted or failed to act with deliberate indifference to that risk." *Id.* at 345–46 (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970).

Here, the deliberate indifference element is at issue. Again, "[a] prison official acts with deliberate indifference 'only if [ (A) ] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.' " *Id.* at 346 (quoting *Farmer*, 511 U.S. at 847, 114 S. Ct. 1970 (alterations by *Gobert*)).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). " 'Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." ' " *Id.* (quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Estelle*, 429 U.S. at 107, 97 S. Ct. 285). "A showing of deliberate indifference requires the prisoner to [demonstrate] that prison officials ' "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." ' " *See id.* (quoting *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985))). Moreover, " '[m]edical

records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.' " *Id.* at 347 n. 24 (quoting *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)). "Deliberate indifference 'is an extremely high standard to meet.' " *Id.* (quoting *Domino*, 239 F.3d at 756).

Lastly, a plaintiff asserting deliberate indifference to medical needs "must establish resulting injuries." *McCarty v. Zapata Cty.*, 243 F. App'x 792, 794 (5th Cir. 2007) (per curiam) (citing *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003)). "A delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and results in substantial harm." *Smith v. Milhauser*, 444 F. App'x 812, 813 (5th Cir. 2011) (per curiam) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

### 3. Claims Against Dr. Lavespere

#### a. Specific Allegations Against Dr. Lavespere

Plaintiff's only allegations against Dr. Randy Lavespere are that he is the "medical director of the R.E. Barrow Treatment Center" at LSP and "has the responsibility to ensure all doctors provide adequate care to offenders, including HIV positive offenders" like the Plaintiff. (Doc. 37 at 7.)

#### b. Analysis

The Court will grant the motion to dismiss as to Dr. Lavespere. Plaintiff provides no specific allegations of any wrongdoing by Dr. Lavespere that would rise to the level of deliberate indifference; Plaintiff's claims against Dr. Lavespere amount to little more than allegations of vicarious liability, which, again, is barred by § 1983. *Simon*, 694 F. App'x at 261.

The Court also rejects Plaintiff's attempt to obtain discovery before dismissal.

" 'One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive.' " *Zapata v. Melson*, 750 F.3d 481, 484–85 (5th Cir. 2014) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). " 'Consequently, the [Fifth Circuit] has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense.' " *Id.* at 485 (quoting *Backe*, 691 F.3d at 648). "[A] district court must first find 'that the plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity.' " *Id.* (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). " 'Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.' " *Id.* (quoting *Backe*, 691 F.3d at 648). " 'After the district court finds a plaintiff has so pleaded, if the court remains "unable to rule on the immunity defense without further clarification of the facts," it may issue a discovery order "narrowly tailored to uncover only those facts needed to rule on the immunity claim." ' " *Id*. (quoting *Backe*, 691 F.3d at 648 (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987))).

Thus, in *Zapata*, the Fifth Circuit vacated the district court's order deferring a ruling on qualified immunity pending discovery because the lower court "failed to make an initial determination that the plaintiffs' allegations, if true, would defeat qualified immunity, falling short of the finding required by *Backe* and *Wicks*." *Zapata v. Melson*, 750 F.3d at 485. The *Zapata* court also did so because, "unlike the court in *Lion Boulos*, the district court did not identify any questions of fact it needed to resolve before it would be able to determine whether the defendants were entitled to qualified immunity." *Id.*

Here, the Court finds that the Plaintiff has not shown entitlement to any discovery with respect to his claims against Dr. Lavespere. Plaintiff has failed to plead any facts which, if true, "would defeat qualified immunity." As a result, the Court rejects Plaintiff's argument. But, as will be discussed below, the Court will grant Plaintiff leave to amend to cure the deficiencies.

### 4. Claims Against Nurse Betty Taplin

#### a. Specific Allegations Against Nurse Betty Taplin

Again, Nurse Betty Taplin "is the senior nurse in charge of HIV positive offenders at" LSP. (Doc. 37 at 7.) According to Plaintiff, "Nurse Betty[] was present[,] and the specialist informed her that she should not dispense Plaintiff's medications all at once. This conversation was recorded." (Doc. 37 at 9.) Plaintiff also alleges: "The TeleMed specialist explained to [him] that if he did not consistently take his medications for the rest of his life, Plaintiff would suffer an agonizing deterioration of his immune system which would make him susceptible to rare cancers and impair his immune system, making him susceptible to an early death." (Doc. 37 at 9.) The TeleMed specialist also said that "inconsistent dispensation of antiretroviral HIV medication leads to viral resistance which compromises Plaintiff's ability to stave off full-blown AIDS." (Doc. 37 at 10.)

Plaintiff also alleges that Nurse Taplin knew about the inconsistent dispensation of Plaintiff's medications. (Doc. 37 at 18.) Further, "[o]n Plaintiff's second TeleMed visit, Defendant Betty actually attempted to disrupt Plaintiff's conversation with his specialist while Plaintiff tried to explain to the specialist that his medication was still being sporadically dispersed and not dispensed with food." (Doc. 37 at 18.) Plaintiff claims: "Not only was Defendant Betty deliberately indifferent to Plaintiff's serious medical needs, she willfully

attempted to stop Plaintiff from helping himself during a TeleMed conference with his specialist." (Doc. 37 at 18.)

### b. Analysis

The Court will deny Plaintiff's motion as to Nurse Taplin. Plaintiff clearly alleges that Nurse Betty was present when Plaintiff was told of the importance of receiving his medications consistently and the possible harm from a failure to do so, so she clearly had knowledge of a substantial risk of harm.

Further, while Defendants are correct that a mere delay in receiving medication is insufficient to constitute deliberate indifference, *see Krivan v. Dall. Cty.*, No. 99-1560, 2002 WL 83768, at *3 (N.D. Tex. Jan. 14, 2002), Plaintiff has alleged more than a mere delay. Rather, construing the allegations of the most recent complaint in a light most favorable to the Plaintiff and accepting them as true, Nurse Betty refused treatment and intentionally obstructed Plaintiff's efforts to receive his medications. This amounts to more than mere negligence or gross negligence. *See Magee v. Williams*, No. 16-0123, 2018 WL 1934072, at *1 (W.D. La. Apr. 24, 2018) (finding plaintiff's claim was not frivolous when he alleged, among other things, that medical providers "refused to provide appropriate treatment").

Lastly, the Court finds that Plaintiff has alleged that he suffered substantial harm from the denial of his medical care. The above allegations detail the severe consequences that Plaintiff faces if deprived of his HIV medications, including: "an agonizing deterioration of his immune system which would make him susceptible to rare cancers and impair his immune system, making him susceptible to an early death", and "viral resistance which compromises Plaintiff's ability to stave off full-blown AIDS." (Doc. 37 at 9–10.) Thus, accepting these allegations as true, Plaintiff clearly sustained substantial harm from Nurse Taplin's conduct.

While defendants are correct that some cases have found, *at the summary judgment stage*, that inmates did not sustain harm from being deprived of HIV medications, *see Krivan*, *supra*; *Gray v. Henderson Cty. Jail*, No. 09-406, 2011 WL 806265, *1, *7 (E.D. Tex. Mar. 1, 2011) (citing *Krivan*)), other cases reach a different result at the pleading stage. Specifically, in *Magee*, 2018 WL 1934072, at *1, Judge Foote in the Western District of Louisiana reversed the magistrate judge and found that plaintiff's claims were not frivolous when he alleged that he was "depriv[ed] of his HIV medication[,] . . . that missed dosages increase[d] the severity of an HIV infection[,]" and that he "suffer[ed] from chest and abdominal pains as well as a burning feeling his veins" that appeared "related to his HIV medication." *Id.* The district court found: "The severe consequences for a compromised immune system that can flow from even a short-term deprivation of antiviral medication combined with Plaintiff's multiple attempts to bring his conditions to the attention DWCC staff are sufficient facts to state a claim for deliberate indifference at this preliminary stage." *Id.*

Further, assuming that Nurse Taplin intentionally obstructed Plaintiff's efforts to obtain HIV medication and refused Plaintiff treatment (as the *Plaintiff's Second Amended Complaint* describes), every reasonable officer in Nurse Taplin's position would know that such conduct was unlawful. Such actions are either plainly incompetent or a knowing violation of the law.

Consequently, the Court will deny the Defendant's motion to dismiss the claims against Nurse Taplin.

### E. Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a). The Fifth Circuit has stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts

often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

This Court previously granted the Defendants' motion to dismiss Plaintiff's claims against the Warden Defendants. (Doc. 36.) Consequently, Plaintiff has had an opportunity to address the deficiencies in his complaints but has failed to adequately do so. Plaintiff's pleadings and opposition also do not demonstrate that he could allege additional facts to state a cognizable claim against the Warden Defendants. *See Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009) (leave to amend may properly be denied where amendment would be futile). As a result, the Court will deny leave to amend against the Warden Defendants.

However, the Court has not previously dismissed the claims against Dr. Lavespere, nor has the Court granted Plaintiff leave to amend these claims. Though the Plaintiff's opposition makes clear that he has no additional facts at this time to assert against Dr. Lavespere, out of an abundance of caution and because this will essentially be Plaintiff's first amendment as to this defendant, the Court will grant Plaintiff an opportunity to amend his complaint as to Dr. Lavespere.

Nevertheless, the Court wishes to note two things. First, Plaintiff's counsel is reminded of her obligations under Rule 11 of the Federal Rules of Civil Procedure. By submitting an amended complaint to the Court, counsel for the Plaintiff is certifying that, to the best of her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[] . . . the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). While the Court fully believes that Plaintiff's counsel will abide by this rule, the Court notes it simply as a reminder.

Second, the fact that the Court may ultimately deny Plaintiff further leave to amend his claims against Dr. Lavespere does not mean Plaintiff is absolutely barred from asserting claims against him if new facts come to light. Specifically, in *Brazier v. Great Atlantic & Pacific Tea Co.*, 256 F.2d 96 (5th Cir. 1958), the Fifth Circuit stated that, even if a district court denies further leave to amend, the plaintiff still has the right "to bring a new action if new facts should be discovered." *Id.* at 99 (citations omitted). Thus, dismissal at this time may not be the end for Plaintiff.

### F. Remaining Claims

Aside from the above claims, Plaintiff also alleges that the Defendants violated the Louisiana State Constitution and committed intentional infliction of emotional distress against

him. (Doc. 37 at 20–21.)  Because Defendants did not seek dismissal of these causes of action, they survive this ruling.

Additionally, Defendants only seek dismissal of Plaintiff's § 1983 claims against Defendants for damages.(Doc. 44-1 at 14.)  Thus, this Court has not ruled on whether Plaintiff has stated a cognizable claim for injunctive relief against the Defendants in their official capacity. This claim also survives.

### III.    Conclusion

Accordingly,

**IT IS ORDERED** that *Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1) and FRCP 12(b)(6)* (Doc. 44) is **GRANTED IN PART** and **DENIED IN PART.**  Plaintiff's claims for prospective injunctive relief are not barred by the Eleventh Amendment.  However, all of Plaintiff's claims for damages against Defendants under 42 U.S.C. § 1983—except Plaintiff's claims against Nurse Betty Taplin—are dismissed for failure to state a cognizable claim. Defendants' motion as it pertains to Nurse Betty Taplin is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims for damages against James LeBlanc, Darrell Vannoy, Stephanie Lamartiniere, and Leslie Dupont are **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on <u>May 2, 2018</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims for damages against Dr. Randy Lavespere are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff is given twenty-one (21) days in which to cure the deficiencies in *Plaintiff's Second Amended Complaint* (Doc. 37), if he can do so.  If Plaintiff does not cure these deficiencies within twenty-one (21) days, his claims against Dr. Lavespere will be dismissed with prejudice.